UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |
|---|---|
| | : 05 Civ. 4053 (SCR) (GAY) |
| SOLOMON ABRAHAMS, | : |
| Plaintiff, | : |
| | : |
| v. | : ORDER ADOPTING |
| | : REPORT AND |
| THE APPELLATE DIVISION OF THE | : RECOMMENDATION |
| SUPREME COURT, SECOND JUDICIAL | : |
| DEPARTMENT, GAIL PRUDENTI, Individually, | : |
| a Justice of the Appellate Division, Second | : |
| Judicial Department, DAVID RITTER, | : |
| Individually, a Justice of the Appellate Division, | : |
| Second Judicial Department, FRANK SANTUCCI, | : |
| Individually, a Justice of the Appellate Division, | : |
| Second Judicial Department, ROBERT SCHMIDT, | : |
| Individually, a Justice of the Appellate Division, | : |
| Second Judicial Department, JAMES E. PELZER, | : |
| Individually, the Clerk of the Appellate Division, | : |
| Second Judicial Department, | : |
| Defendants. | : |

_____ :

STEPHEN C. ROBINSON, District Judge:

This case was referred to Magistrate Judge George A. Yanthis for a report and

recommendation on Defendants' motion to dismiss the Amended Complaint filed by Solomon

Abrahams ("Plaintiff").

**I.    Background**

    **a.  Facts**

Plaintiff is suing the Appellate Division of the Supreme Court, Second Judicial

Department ("Appellate Division"); Appellate Division justices Gail Prudenti, David Ritter,

Frank Santucci, and Robert Schmidt, in their individual capacities; and, finally, also in his

individual capacity, James E. Pelzer, the Clerk of the Appellate Division.

Plaintiff was admitted to practice law before the courts of the State of New York on December 20, 1950, and was subsequently admitted to practice before the United States District Courts of the Southern and Eastern Districts of New York.

This case arises from two court sanctions against Plaintiff which, coupled with several other disciplinary violations, resulted in the suspension of his license to practice law.  First, on September 14, 1999, the Westchester County Supreme Court issued a sanction order directing Plaintiff to pay $4,500 by October 1, 1999 to the Lawyers' Fund for Client Protection for the State of New York for violating pretrial discovery orders and engaging in frivolous motion practice.  *Caiola v. AllCity Ins. Co.*, Nos. 1333/96, 8095/99, 2002 WL 1448855, *1 (N.Y. Sup. June 10, 2002).  Second, on July 10, 2001, the Westchester Supreme Court directed Plaintiff to pay $3,500 by July 30, 2001 to the Client Protection Fund for once more engaging in frivolous motion practice.  *Id.* at *2.

Plaintiff did not comply with these sanctions, and the trial court found him guilty of criminal contempt.  *Id.* at *19-20.  This order subsequently was overturned by the Appellate Division because Plaintiff was not personally served with notice of the proceeding.  *Caiola v. Allcity Ins. Co.*, 305 A.D. 2d 350, 351, 758 N.Y.S. 2d 683, 685 (App. Div. 2d Dep't 2003).  On July 22, 2003, the Westchester Supreme Court judge denied Plaintiff's motion to dismiss the criminal contempt proceeding against him.  *Caiola v. Allcity Ins. Co.*, 7 A.D. 3d 557, 557, 776 N.Y.S. 2d 504, 2004 N.Y. Slip Op. 03756 (App. Div. 2d Dep't 2004).  The Appellate Division affirmed, holding that his argument that the Westchester Supreme Court "did not have the power to commence the criminal contempt proceeding against him *sua sponte*" was "without merit." *Id.*

On October 16, 2002, the Appellate Division issued an interim order suspending Plaintiff's law license pursuant to New York Judiciary Law § 90(4)(f).  Plaintiff moved to vacate this interim suspension pending final disciplinary proceedings by the Grievance Committee; the Appellate Division denied the motion. *In re Abrahams*, 2001-08705, 2003 WL 23100117, *1 (App. Div. 2d Dep't, Dec. 29, 2003).

On December 29, 2003, Plaintiff was suspended from the practice of law for five years. *In re Abrahams*, 5 A.D. 3d 21, 26, 770 N.Y.S. 2d 369 (App. Div. 2d Dep't 2003).  In sustaining thirteen of nineteen charges that had been brought before the Special Referee, the Appellate Division unanimously found that Plaintiff "engaged in a pattern and practice of frivolous conduct, disregarding court orders and judgments, and providing misleading information to tribunals," indicating "disrespect for the courts and the judicial process." *Id*.  The court considered the letters and affidavits of good moral character submitted on Plaintiff's behalf, as well as the four letters of caution and four letters of admonition in Plaintiff's disciplinary file. *Id.* at 26.  Citing, *inter alia*, Plaintiff's engagement in conduct adversely reflecting on his fitness to practice in violation of New York Code of Professional Responsibility DR 1-102(a)(7) (22 N.Y.C.R.R. 1200.3(a)(7)), the Appellate Division suspended him for five years and set forth certain conditions he would have to fulfill for reinstatement. *Id.* at 27.

The New York Court of Appeals dismissed Plaintiff's appeal on February 24, 2004, holding that he had no grounds to appeal as of right the unanimous order as there was no "direct involvement of a substantial constitutional question." *In re Abrahams*, 1 N.Y. 3d 619, 620, 808 N.E. 2d 1273, 1273, 777 N.Y.S. 2d 13, 14 (2004).  Soon thereafter, the Court of Appeals then denied leave to appeal. *In re Abrahams*, 3 N.Y. 3d 601, 816 N.E. 2d 194, 782 N.Y.S. 2d 404 (2004).

Plaintiff filed his Complaint before this Court on April 22, 2005.  In his Amended Complaint, filed on July 18, 2005, Plaintiff asserts that the Appellate Division lacked the subject matter jurisdiction to issue the interim suspension order pursuant to New York Judiciary Law §§ 90(4)(d) and (f); that the order was not preceded by an application from the Grievance Committee pursuant to 22 N.Y.C.R.R. § 691.7; and that the order awarding sanctions for frivolous conduct was erroneous in that it was not in the form of a money judgment.  Plaintiff contended that Defendants' actions deprived him of his rights to due process and equal protection, and subjected him to cruel and unusual punishment, and unlawful seizure of his license to practice law.  Am. Compl. ¶ 30.

This Court referred this matter to Magistrate Judge George A. Yanthis on September 12, 2005, to issue a report and recommendation ("Report and Recommendation") on Defendants' motion to dismiss Plaintiff's action pursuant to Rules 12(b)(1) and 12(b)(6).  Defendants' grounds for dismissal are: (1) this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine and the Eleventh Amendment of the United States Constitution; (2) the justices have absolute immunity; (3) *Younger* abstention bars Plaintiff's claims; (4) Plaintiff's allegations that James E. Pelzer violated his §1983 rights are insufficient to state a claim.  For the reasons stated below, Defendants' motion to dismiss is granted.


II.      **Analysis**

a.  **Standard of Review for Report and Recommendation**

In reviewing a Report and Recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  To accept a Report and Recommendation to which neither party has timely

objected, "a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). *See also Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991) (court may accept report if it is "not facially erroneous"). However, a district court judge is required to make a *de novo* determination as to the aspects of the Report and Recommendation to which objections are made. 28 U.S.C. § 636 (b)(1); *United States v. Raddatz*, 447 U.S. 667, 673-674 (1980); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

A district court's obligation to make a *de novo* determination does not require that the judge conduct a hearing on the matter, however. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed. 2d 424 (1980); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). Instead, a *de novo* determination requires "review of the magistrate's proposed findings and an exercise of sound judicial discretion with respect to whether reliance should be placed on those findings." *American Express Int'l Banking Corp. v. Sabet*, 512 F. Supp. 472, 473 (S.D.N.Y. 1981), *aff'd without opinion*, 697 F.2d 287 (2d Cir. 1982), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed. 2d 111 (1982).

Here, Plaintiff has objected to Judge Yanthis's recommendation that this Court grant Defendants' motion to dismiss. This Court carefully engaged in a *de novo* review of Judge Yanthis's thorough and thoughtful Report and Recommendation, and Plaintiff's objections to the same. For the reasons stated in that Report, this Court grants Defendants' motion to dismiss.

### b.  Standard of Review for Defendants' Motion to Dismiss

When presented with motions to dismiss on both 12(b)(1) and 12(b)(6) grounds, a court must first decide the 12(b)(1) motion as defenses and objections are moot if the court does not

have subject matter jurisdiction over the complaint.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 675 (2d Cir. 1990).


### i.      12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings . . . ." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).  The party asserting subject matter jurisdiction must prove by a preponderance of the evidence that it exists.  *Id*. Here, Plaintiff bears the burden of establishing the court's jurisdiction.  For the reasons explained below, this case is dismissed against all defendants on 12(b)(1) grounds.


### ii.     12(b)(6)

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court is limited to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).  The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-movant, drawing all reasonable inferences in its favor.  *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994).

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts entitling it to relief in support of its claim.  *Zerilli-Edelglass v.*

*N.Y. City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).  Even though "it may appear on the face of the pleading that a recovery is very remote and unlikely," the court must only determine if the plaintiff is entitled to even offer evidence to support its claims.  *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

### c.   Defendants' Motion to Dismiss

#### i.   Rooker-Feldman Doctrine

Under the *Rooker-Feldman* doctrine, a federal court cannot consider claims decided by a state court or claims "inextricably intertwined" with an earlier state-court judgment.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 150 (1923); *Dist. of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311 (1983).  "[A] federal claim is 'inextricably intertwined' with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'"  *Mackenzie v. Donovan*, 375 F. Supp. 2d 312, 319 (S.D.N.Y. 2005) (quoting *Bell v. State*, 99-5809, 2000 WL 1273637, at *4 (S.D.N.Y. Sept. 7, 2000)).  The *Rooker-Feldman* doctrine precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 2654 (1994).

Plaintiff objected to Judge Yanthis's recommendation that Defendants' 12(b)(1) motion to dismiss be granted for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  Accordingly, this Court reviews that recommendation *de novo*.

Plaintiff's claims here are "inextricably intertwined" with his state court claims and thus this Court lacks subject matter jurisdiction. *See Mackenzie*, 375 F. Supp. 2d (holding that the federal claims which arose from state court criminal contempt proceedings were "inextricably intertwined" with the state court action and, thus, the federal district court lacked subject matter jurisdiction over the claims pursuant to the *Rooker-Feldman* doctrine). Further, Plaintiff is asking this Court to assume appellate jurisdiction and to overrule the state court judgment, which this Court may not do under the *Rooker-Feldman* doctrine. *See id.* (holding that the plaintiff was effectively asking the federal court to review and rule on the propriety of the state court action and that granting the requested relief would effectively declare the state court order invalid).

Therefore, the *Rooker-Feldman* doctrine bars suits against all defendants in this matter. Judge Yanthis's recommendation is adopted and Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

### ii.    Eleventh Amendment

The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has consistently interpreted the Amendment to extend to suits brought in federal courts by the state's own citizens as well as by those citizens of other states. *See Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996). The party asserting Eleventh Amendment immunity "bears the burden of proving its applicability."

*Christy v. Pa. Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1995).  Here, Defendants bear the burden.

### 1.   Defendant Appellate Division

Unless a state consents to suit, the Eleventh Amendment bars suits brought against it in federal court by its own citizens.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).  New York State has not consented to suit in federal court.  *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977).  Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York.  *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).  A suit against a state court, such as defendant Appellate Division, is considered to be a suit against the state, and is therefore also prohibited by the Eleventh Amendment.  *See, e.g.*, *Mathis v. Clerk of the First Dep't, App. Div.*, 631 F. Supp. 232, 234 (S.D.N.Y. 1986).

Since Plaintiff did not raise any timely objections to the recommendation of Judge Yanthis regarding Defendant Appellate Division, this Court need only, and does, find that no clear error exists.  Thus, Plaintiff's claims against the Appellate Division are dismissed pursuant to the Eleventh Amendment.

### 2.   Defendants Prudenti, Ritter, Santucci, Schmidt, and Pelzer

The Eleventh Amendment does not, however, bar suits against state officials sued in their individual capacities.  *See Hafer v. Melo*, 502 U.S. 21, 31-32 (1991).  Section 1983 actions against state officials in their personal capacities alleging violations of federal constitutional rights are not actions against a state because, as a matter of law, unconstitutional acts performed by state officials cannot be authorized by the state.  *See Pennhurst*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. 123, 160 (1908)).

Plaintiff's action here against defendants Prudenti, Ritter, Santucci, Schmidt, and Pelzer is in their individual capacities.  (Am. Compl. ¶¶ 5-6.)  Accordingly, the Eleventh Amendment does not apply to these individual defendants.  No timely objections to Judge Yanthis's recommendation have been raised and, under a clear error standard, this Court accepts the recommendation and dismisses Plaintiff's personal capacity claims against these defendants.

### iii.    Absolute Judicial Immunity

It is well established that a judge is entitled to absolute judicial immunity under § 1983 for actions performed in his judicial capacity.  *See Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999).  "[T]his immunity acts as a complete shield to claims for money damages."  *Montero*, 171 F.3d at 760 (citations omitted).  In addition, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990) (citations omitted).  To determine whether a judge acted in the clear absence of jurisdiction, the court examines (1) whether a reasonable judge would have thought the action was proper; and (2) whether the judge knew or should have known of his own jurisdiction.  *See Tucker*, 118 F.3d at 934.

Here, Plaintiff objected to Judge Yanthis's recommendation that defendants Prudenti, Ritter, Santucci, and Schmidt are entitled to absolute judicial immunity and that Plaintiff's claims against them in their individual capacities be dismissed.  Thus, this Court reviews that recommendation *de novo* and finds that judicial immunity bars claims against these defendants in their individual capacities.

These defendants acted in their judicial capacities when they issued the interim order suspending Plaintiff's law license on May 21, 2002 and later the decision to suspend Plaintiff's license for five years on December 28, 2003.  The separate sanctions that led to the contempt convictions, the interim suspension order, and the final suspension order were executed following the procedures set forth in the laws of the United States.  *See* N.Y. Jud. L. § 90 (2), (4); 22 N.Y.C.R.R. § 691.7; 22 N.Y.C.R.R. § 130-1.2.

Further, Plaintiff's claim that these defendants acted in clear absence of jurisdiction lacks merit.  The Appellate Division of the Supreme Court is authorized to "suspend from practice" attorneys who are guilty of professional misconduct including the "serious crime" of criminal contempt of court which frustrates the judicial process.  *See* N.Y. Jud. L. § 90 (2), (4).  Plaintiff's interim suspension arose from his contempt convictions in the *Caiola* and *Weinerman* matters, where the Appellate Division found that Plaintiff "engaged in a pattern and practice of frivolous conduct, disregarding court orders and judgments, and providing misleading information to tribunals."  *In re Abrahams*, 5 A.D. 3d, at 26.  Reasonable judges in a similar situation would have thought the Defendants' actions proper, as reflected by the fact that the Court of Appeals denied Plaintiff's request to appeal.  *In re Abrahams*, 3 N.Y. 3d 601 (2004).

Plaintiff also argues that the Westchester Supreme Court lacked the authority to issue the interim order of suspension and sanctions *sua sponte* and that the Appellate Court defendants should have been aware of this and acted accordingly.[1]  However, the Supreme Court does, in fact, have this authority.  Under the "inherent powers doctrine," a court of record is "vested with inherent powers, which are neither derived from nor dependent upon express statutory authority, and which permit . . . [it] to do all things reasonably necessary for the administration of justice

---

[1] Plaintiff raises this claim both with regard to Defendants' absolute judicial immunity and the *Rooker-Feldman* doctrine.  However, the fact that the Supreme Court acted *sua sponte* does not bear on the analysis of the *Rooker-Feldman* doctrine and so is addressed only in this section.

within the scope of [its] jurisdiction." *Gabrelian v. Gabrelian*, 108 A.D. 2d 445, 448 (App. Div.

2d Dep't 1985) (citations omitted), *appeal dismissed* 66 N.Y. 2d 741 (1985), *overruled in part by*

*Matter of A.G. Ship Maintenance Corp. v. Lezak*, 69 N.Y. 2d 1, 6 (1986).  Among the powers

that the court may exercise is "the inherent power to enforce respect for and compliance with

their judgments and mandates by punishment for contempt, which power is not dependent upon

any statute." *Id.* at 450.  As the Supreme Court here noted, the suspension order and sanctions

were issued "[b]ecause this Court shall not permit an attorney to make a mockery of the judicial

system." *Caiola*, 2002 WL 1448855, *1.  In addition, statutory law recognizes the power of

courts to punish individuals for criminal contempt.  *See* N.Y. Jud. Law art. 19.  Since the

Supreme Court did have authority to act *sua sponte*, Plaintiff's claims against the Appellate

Division lack merit.

      For the aforementioned reasons, defendants Prudenti, Ritter, Santucci, and Schmidt were

acting in their judicial capacities and are entitled to absolute judicial immunity.  This Court

adopts Judge Yanthis's recommendation and dismisses Plaintiff's claims against these

defendants in their individual capacities.


### iv.   *Younger* Abstention

*Younger* abstention generally precludes federal courts from interfering with an ongoing

state criminal proceeding.  *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971).  Defendants

claim that the "[a]bstention principles enunciated in *Younger* also require dismissal of

[P]laintiff's claim for declaratory relief because, at the time this action was commenced,

[P]laintiff was a party to an ongoing state court proceeding that involved a matter of significant

local concern, namely, his attorney disciplinary proceeding, which is pending in the Appellate

Division, a forum that is capable of hearing and deciding [P]laintiff's purported federal claims." (Def.'s Mem. Supp. Mot. Dismiss 21.)  However, application of the *Younger* principles is inappropriate where a plaintiff seeks money damages for an alleged violation of § 1983, as Plaintiff does in this matter.  *See Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

No timely objections to Judge Yanthis's recommendation have been raised and, under a clear error standard, this Court accepts the recommendation.  Accordingly, Defendants' motion to dismiss pursuant to the *Younger* abstention doctrine is denied.

### v.    Failure to State a Claim

Plaintiff fails to state a claim under 42 U.S.C. § 1983 against James Pelzer, Clerk of the Court, Appellate Division, because the pleadings do not allege the required personal involvement by Pelzer in any constitutional deprivation.  Although Pelzer is named as a defendant, Plaintiff does not make any further assertions against him.

Since Plaintiff has not raised any timely objections to Judge Yanthis's recommendation, applying the clear error standard, this Court accepts the recommendation.  Thus, Plaintiff's claims against defendant Pelzer are dismissed pursuant to Rule 12(b)(6) for failure to state a claim under § 1983.

### vi.   Supplemental Jurisdiction

Federal district courts have jurisdiction over claims that are part of the same case or controversy as another claim over which the court has original jurisdiction.  28 U.S.C. § 1367(c). However, a district court may decline to exercise this supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  When

determining whether to exercise supplemental jurisdiction, a district court has "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case." *Yaba v. Cadwalader, Wickersham & Taft*, 970 F.2d 1103, 1110 (2d Cir. 1992)).

Plaintiff objected to Judge Yanthis's recommendation that this Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, this Court reviews that recommendation *de novo*. Since all claims upon which this Court had original jurisdiction have been dismissed,[2] this Court follows Judge Yanthis's recommendation and declines to exercise supplemental jurisdiction.

### III.   Conclusion

Defendants' motion to dismiss under Rule 12(b)(1) is granted as to all defendants for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Although this finding is sufficient to dispose of this matter, this Court would also dismiss Plaintiff's claims against the Appellate Division under the Eleventh Amendment; against defendants Prudenti, Ritter, Santucci, and Schmidt, in their individual capacities, under the principles of absolute judicial immunity; and against defendant Pelzer for failure to state a claim under § 1983.

This Court denies Defendants' motions to dismiss pursuant to *Younger* abstention principles. However, this does not affect the outcome of this case. For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

White Plains, New York
Dated: February 7, 2007

Stephen C. Robinson
United States District Judge

---

[2] Plaintiff's allegations that Defendants deliberately acted in bad faith are irrelevant to this analysis.

14